UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA PETERSEN, individually and as a member of the Board of Education of the Hunterdon Central Regional High School district, and John Peterson, individually and on behalf of his minor child and all similarly situated students of the Hunterdon Central Regional High School,<br><br>                              Plaintiff,<br><br>v.<br><br>JEFFREY MOORE, Ed.D., individually and in his capacity as Superintendent of School, and the HUNTERDON CENTRAL REGIONAL HIGH SCHOOL BOARD OF EDUCATION,<br><br>                              Defendants. | Case No.<br><br>**VERIFIED COMPLAINT AND JURY DEMAND** |

The plaintiffs REBECCA PETERSEN ("Mrs. Petersen"), individually and as member of the Hunterdon Central Regional High School ("HCRHS") district and all citizens of such District, and JOHN PETERSEN ("Mr. Petersen"), by their attorneys Murray-Nolan Berutti LLC, with knowledge as to their own acts, an on information and belief as to all others, alleges as follows:

## OVERVIEW

1.      This matter arises from an illegal investigation being undertaken by defendants Jeffrey Moore, Ed.D., who is spearheading the investigation, and the HCRHS district Board of Education ("Board"). The illegal investigation is likely to lead to a censure vote of Mrs. Peterson, on April 24, 2023. More specifically, defendants Moore and the President and Vice President of the Board were made aware by "activists" about a Twitter account known as "mammallama," wherein certain anonymous Tweets related to transgender issues were made. More specifically, the Tweets included a photograph of a HCRHS display for Women's History Month which features photographs of two biological males dressed in women's clothing which were critical of

defendant Moore and the display, asserting it to be misogynistic.

2.     Since that time, defendant Moore, together with Board President Lisa Hughes ("Hughes") and Vice President Dorothea Kellogg ("Kellogg") have decided that they wish to tie the constitutionally protected anonymous writer's "tweets" to the plaintiff Mrs. Petersen, and conducted a closed Board meeting designed to put forth their "evidence" of such belief. Such putative evidence included emails sent by Mrs. Petersen and emails sent by Mr. Petersen to school administrators related to curriculum issues related to their minor son which are not the subject of Board review for any legitimate purpose.

3.     The day after such meeting, defendant Moore interrogated a long-time security guard at HCRHS, Paul Tanko, and advised that they were investigating how the photograph taken of two men in a Women's History Month display wound up on the internet. While Mr. Tanko admitted he took the photo and shared it with an interest group because he felt such display violated his mores and religious sensibilities, which he admitted to defendant Moore, defendant Moore advised that Mr. Tanko would be suspended with pay while the "investigation" was ongoing.

4.     The subject anonymous speech is protected by the First and Fourteenth Amendments of the United States Constitution, and Article I, §6 of the New Jersey Constitution. Per New Jersey statute, the Board's work must be confined to making, planning, and appraisal, related to framing policies in consultation with those affected by the same. There is no investigatory function of a Board or Superintendent, most particularly on seeking to determine the identity or identities of anonymous speakers who are critical of the Superintendent and/or the Board, which is constitutionally protected speech.

5.     There was and is no legitimate reason to investigate the owner of the account because even if there was a strong believe that the account belonged to Mrs. Petersen, there was no violation of law and there was no violation of the New Jersey School Ethics Act, *N.J.S.A.*

18A:12-21 *et seq.*, since being a member of a Board of Education does not cause one to abdicate her First Amendment rights, and such members are free to publicly address any matter which is of importance to her as a matter of law provided she is not holding herself or himself out to the public as a member of the Board when engaging in such speech; yet the Board is scheduled to take action against Mrs. Petersen on April 24, 2023, at which time it likely will attempt to censure her due to her perceived association with mammallama.

6.    Moreover, the Superintendent and the Board's zeal to attempt to enforce a particular and singular narrative related to transgender issues is a form of religious fanaticism which is an attempt to establish a religion since *it requires one to **believe** the truth of what is being spoken, although it is contrary to nature and biology,* thus constituting a violation of the United States Constitution's Establishment Clause and the New Jersey Constitution.

7.    Indeed, the Superintendent and Board were made publicly aware of a different Board member's anti-Christian speech on Facebook but has made no public response and has undertaken no investigation for such speech, nor have they expressed a public opinion of such speech because, on information and belief, their religious fervor for transgenderism cannot coexist with Christianity in their views. Thus, perceived "anti-Transgenderism" speech is punished while perceived anti-Christian speech is not, because defendants are establishing Transgenderism as a required and doctrinaire religion.

8.    For such reasons, defendants, who are state actors, have violated Mrs. Petersen and Mr. Petersen's constitutional rights, those of the anonymous writer or writers, and the citizens of the HCRHS district, such that the **plaintiffs hereby are moving strictly in the public interest for an injunction** pursuant to pertinent federal and state statutes to prohibit defendants from continuing their fanatical inquiry and investigation into the identity of an anonymous speaker whose speech is protected by the Constitution and laws of the United States and New Jersey, and

to stop the continued establishment of religion which they are imposing on members of the District and its students.

## THE PARTIES

9.     Mrs. Petersen is an individual who is a duly elected member of the Board, a parent of children in the HRCHS district, and a resident of the HRCHS district, whose address is 19 Fieldstone Place, Flemington, New Jersey 08822.

10.    Mr. Petersen is an individual and a parent of children in the HRCHS district, and husband of Mrs. Petersen, whose address is 19 Fieldstone Place, Flemington, New Jersey 08822.

11.    Defendant Jeffrey Moore, Ed.D., is Superintendent of the HRCHS district, and is an individual, whose address is 15 Haverfarm Road, Clinton, New Jersey 08809.

12.    Defendant Hunterdon County Regional High School district Board of Education is duly organized pursuant to the laws of the State of New Jersey.

13.    Defendants Moore and the Board are state actors with respect to all material allegations herein and were and are engaged in official policy making activities and carrying out the same.

## JURISDICTION AND VENUE

14.    This action is brought pursuant to 42 U.S.C. § 1983, such that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

15.    Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1367.

16.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b) since defendants reside in the District and the events and omissions complained of occurred in the District.

## FACTS COMMON TO ALL COUNTS

17.    Mrs. Petersen is a duly elected Member HCRHS district, is a parent of a child at HCRHS, and is a resident of the HCRHS district, and brings this action as a Member and

individually on behalf of all Residents of the HCRHS district. She also has a child in the school and two living within the district. Mrs. Petersen's claims are brought exclusively in the public interest, and she seeks no money damages, since defendants' actions violate the Constitution and laws of the United States and New Jersey.

18.     Mr. Petersen is Mrs. Petersen's husband and is the father of a minor student at HCRHS, and brings this Complaint on behalf of himself, his child, and all residents of the HCRHS district.

19.     On March 20, 2023, at an open public meeting of the Board, certain residents of the community complained of Tweets on the social media outlet Twitter which such residents felt constituted inappropriate speech by an anonymous "Tweeter," which such individuals attributed to an unidentified member of the HCRHS Board.

20.     On March 21, 2023, Mrs. Petersen was called into a private meeting of defendant Moore, together with Hughes, Kellogg, who accused Mrs. Petersen of being the anonymous Tweeter.

21.     Upon information and belief, Hughes thereafter contacted each individual Board member by telephone or otherwise to inform them that in her judgment, Mrs. Petersen was the person who was behind the anonymous Tweets.

22.     The subject Tweets, regardless of who posted them, were legal and constituted speech protected by the United States Constitution, Amendments 1 and 14, which protect anonymity is speech and the New Jersey Constitution, Art. I ¶ 6.

23.     Thereafter, on March 22, 2023, Hughes sent an email to the entire HCRHS community from an official HCRHS account of a third party, a true copy of which is attached hereto as **Exhibit A**, in which she purported to assert the official judgment of the entire HCRHS Board, and more specifically, "These posts convey outright disdain and disrespect for our board,

our school, and our staff. Therefore, we believe that these posts do not reflect how a board member should communicate about the district they serve."

24.     The email further asserted that such anonymous Tweets came from a Member of the Board, and expressed a purported judgment of the entire Board that the content of such Tweets were disdainful, and more specifically: "The Board and our Superintendent reject the hateful ideas posted in this account as harmful to children and adults in our community and to our school's mission."

25.     Hughes stated that "The Board recognizes the gravity of this allegation and takes seriously its obligation to investigate."

26.     Hughes further asked that any other information to assist in the "investigation" be emailed to her at her official HCRHS email address.

27.     Upon information and belief, such email to the entire community by and on behalf of Hughes was sent with the authority and approval of Kellogg and Moore.

28.     The Board of HCRHS did not vote on or approve of such putative policy, did not vote on the subject email, and did not officially authorize Hughes, Kellogg, or Moore to connect their concerns with the HCRHS email server.

29.     Moreover, although the email was shared by Hughes with Board members prior to its being sent, Mrs. Petersen was advised that her input was irrelevant.

30.     Hughes' email effectively served as a type of 'speech police' warning to residents of the HCRHS district that views opposing her own views and those of Kellogg and Moore were disapproved and potentially punishable.

31.     Further, the Principal of HCRHS, Edward Brandt, who reports directly to Moore, shared Hughes' email with the entire student body, which was done, upon information and belief,

6

at Moore, Hughes and/or Kellogg's direction and with their approval. A true copy of the email is attached hereto as **Exhibit B**.

33.    Such publication to the student body placed students, including Mr. and Mrs. Petersen's minor child and other children who may be identified with Board Members, at risk of harassment, bullying, and adverse consequences strictly because an anonymous individual exercised his or her rights to free speech which are protected by the United States Constitution, Amendments One and Fourteen, and the New Jersey Constitution, Article 1, ¶ 6.

34.    Further, such email by Principal Brandt, with the approval and authority of Moore, Hughes, and Kellogg, served as a type of *de facto* 'thought police' warning to students of HCRHS that views opposing his own and those of Moore, Hughes, and Kellogg, were disapproved and potentially punishable. Further, the views of Moore, Hughes and Kellogg are their own beliefs about transgenderism which defy nature and biology as we know it, thus rising to the level of religious doctrine which they are imposing on members of the community and students at the school under active threat of punishment for those not adhering to and/or speaking out against such beliefs, in violation of the Establishment Clauses of the United States and New Jersey Constitutions.

35.    Defendants called an Executive Session of the Board for Wednesday, March 29, 2023, for the purpose of "investigating" the anonymous speech.

36.    Defendants were aware that their efforts have garnered substantial publicity including an article in NJ.com putatively tying Mrs. Petersen to the anonymous Tweets which are constitutionally protected.

37.    Although the meeting was scheduled to be a closed session, it was scheduled for a larger auditorium as opposed to in the normal smaller space where meetings are held because defendants were seeking to stir up mass dissention so as to cause threats and danger to Mrs.

Petersen and others who they believe share the views of the anonymous poster.

38.     Presumably additional security was required at taxpayer expense because the actions of Hughes, Kellogg, and Moore threaten to entice anger and derision against Mrs. Petersen during the public comment portion of the meeting in order to attempt to cause public humiliation of Mrs. Petersen, given defendants' ongoing fomentation of unrest concerning a matter public concern written by an anonymous person, but which is being attributed by them to Mrs. Petersen.

39.     Demand was made on behalf of Mr. and Mrs. Petersen that the subject meeting be cancelled since it violates their civil rights, the rights of all members of the community in light of the meeting's illegal purpose of conducting an investigation into anonymous speech, and the rights of the anonymous poster.

40.     Despite such demand defendants proceeded with the meeting, during which the public comment portion did, indeed, result in castigation of Mrs. Petersen in keeping with Moore's efforts and those of Board President Hughes and Vice President Kellogg, who instigated the meeting with Moore.

41.     One example of such rhetoric aimed at Mrs. Petersen during the public comment was one speaker who said "you (the tweeter) would probably be calling for a lot more if you could get away with it so I guess the matter is with those of you who are not insane maniacs. Will you stand for that? Will you let this one rogue board member basically call for the genocide of many of a demographic of your students?"

42.     At the same meeting, a community member raised concerns about another Board member's divisive rhetoric posted on the Board member's personal account that can be considered anti-Christian, and which did not indicate that the Board member was not speaking as a member of the Board, yet Moore, Hughes, and Kellogg were unconcerned, have not addressed the community at all regarding such posts, and are not conducting an investigation since they are

exercising viewpoint discrimination which, upon information and belief, is caused by their religious fervor for transgenderism which they believe cannot reasonably coexist with Christianity.

43.    At the meeting, following public comments, the Executive Session was dedicated to Moore's efforts to demonstrate his "evidence" that Mrs. Petersen purportedly is the anonymous Tweeter. Further, such public "show trial" violated all notions of fundamental fairness and due process.

44.    In his 90-minute presentation, without their permission, Moore utilized emails from Mr. Petersen which were addressed to History Department administrators related to his child which were not properly in the Board's possession for any purpose, much less to attempt to violate the civil rights of Mrs. Petersen for her perceived speech, the privacy of her and Mr. Petersen's child, the speech of the anonymous Tweeter or Tweeters, and the rights of the general public to have a school board follow the law and not to engage in an unconstitutional investigation seeking retribution against an anonymous speaker who is critical of their acts. Such acts were and continue to be an attempt to so malign Mrs. Petersen in the eyes of her fellow Board members and to create an environment so untenable as to force Mrs. Petersen to resign her seat, at which point they would appoint a Board member of their choosing as a replacement so that the votes of the citizens that elected Mrs. Petersen would be nullified.

45.    On Friday, March 31, 2023, Moore informed the Board that on Thursday, March 30, 2023, he had placed a security guard on paid suspension because Moore had found video evidence of the security guard photographing a publicly viewable display in honor of Women's History Month which featured two men dressed in women's-style clothing. Moore further indicated that he "interviewed" the guard, who admitted being offended by the display and sending the photograph to a local group.

46.    The suspension of the guard was improper, as was the investigation into his First

Amendment protected activity of taking and disseminating a photograph which was in a public school display, and which others were free to photograph and, in fact, did photograph, and was yet another warning to staff members having differing viewpoints and religious mores than Moore that such viewpoints and religious beliefs are unacceptable and will be punished to the extent that they conflict with Moore's beliefs.

47.    The security guard, Paul Tanko, has filed a lawsuit against Moore and the Board, attached hereto as **Exhibit C**, which notes that Moore advised him that the suspension is pending ongoing investigation into the "mammallama" account, which defendants believe utilized Mr. Tanko's photograph in a Tweet.

48.    Defendants' only reason to investigate the mammallama account is to seek to punish the anonymous person for his, her, or their speech, and to place such person or people in a negative light because such speech offends the sensibilities and religious convictions of Moore and members of the Board.

49.    Since Moore has undertaken his efforts to identify "mammallama," and has been aware (and likely instigated) third parties to associate such anonymous account with Mrs. Petersen, Mrs. Petersen has received disturbing emails to her school board account referring to her as a part of "white trash supremacist KKKhristinalist Nationalist Fascist Traitor sKKKum," and that "You deserve the derision you are trying to hide from."

50.    Such efforts to investigate and punish the anonymous Tweeter, and the attempts to associate Mrs. Petersen with same, the use of Mrs. Petersen and Mr. Petersen's emails and in person conversations related to their child, and the suspension of Mr. Tanko, violate the rights of all such individuals under Amendments I and XIV of the United States Constitution, and Art. I, Sec. 6 of the New Jersey Constitution.

51.    Such efforts are impermissible and inappropriate, and have and continue to

irreparably harm the plaintiffs by damaging their names and reputation, and the rights of their child for such association, the anonymous tweeter or tweeters, and the public at large whose paid Superintendent and elected Board are engaged in unconstitutional activity. Mrs. Petersen understands that at upcoming Committee Meetings, the Board intends to approve a vote on her censure for April 24, 2023, based on the illegal investigation.

## FIRST COUNT
### (Injunction 42 U.S.C. § 1983, First Amendment Speech)

52.    The plaintiffs repeat and reassert each and every allegation above as if fully set forth herein at length.

53.    Defendants have committed a constitutional tort by virtue of their investigating an anonymous author who is critical of the defendants and the public school for purposes of punishing or causing harm to them for the content of such speech.

54.    Such acts are being carried out as official policy, are being undertaken in bad faith, and are not in the public interest.

55.    By their actions, defendants have deprived the plaintiffs of rights, privileges, or immunities secured by the Constitution and laws, *to wit*, United States Constitution Amendments I and XIV, and are causing irreparable harm with such violations.

WHEREFORE, the plaintiffs demand judgment in their favor, and against defendants, as follows:

A.    Restraining and enjoining defendants from taking any actions to further their investigation of the identity of anonymous speakers who are critical of the Superintendent, Board, or public schools related to transgenderism programming and curricula, including, without limitation: making inquiries of staff, Board Members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being

the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons.

B.      Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

C.      Awarding such other and further equitable relief as may be just.

## SECOND COUNT
### (Injunction *N.J.S.A.* 10:6-2, Speech)

56.     The plaintiffs repeat and reassert each and every allegation above as if fully set forth herein at length.

57.     By their actions as aforesaid, defendants have and are continuing to violate the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, *to wit*, violating Art. I, Par. 6 of the New Jersey Constitution, and are causing irreparable harm.

WHEREFORE, the plaintiffs demand judgment in their favor, and against defendants, as follows:

A.      Restraining and enjoining defendants from taking any actions to further their investigation of the identity of anonymous speakers who are critical of the Superintendent, Board, or public schools related to transgenderism programming and curricula, including, without limitation: making inquiries of staff, Board Members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons.

B.      Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

C.      Awarding such other and further equitable relief as may be just.

## THIRD COUNT
### (Injunction 42 U.S.C. § 1983, Establishment of Religion)

58.     The plaintiffs repeat and reassert each and every allegation above as if fully set forth herein at length.

59.     Defendants' efforts to compel individuals to accept their vision with respect to transgender people is religious in nature.

60.     By investigating mammallama and attempting to castigate plaintiffs or otherwise harm them in their effort to compel a singular way of thinking about transgenderism, which is their vision, defendants' are engaged in an establishment of religion in violation of United States Constitution Amendments I and XIV, and are causing irreparable harm with such violations.

WHEREFORE, the plaintiffs demand judgment in their favor, and against defendants, as follows:

A.     Restraining and enjoining defendants from taking any actions to further their investigation of the identity of anonymous speakers who are critical of the Superintendent, Board, or public schools related to transgenderism programming and curricula, including, without limitation: making inquiries of staff, Board Members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons.

B.     Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

C.     Awarding such other and further equitable relief as may be just.

13

**FOURTH COUNT**
**(Injunction *N.J.S.A.* 10:6-2, Establishment of Religion)**

61.     The plaintiffs repeat and reassert each and every allegation above as if fully set forth herein at length.

62.     By their actions as aforesaid, defendants have and are continuing to violate the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, *to wit*, violating Art. I, Par. 4 of the New Jersey Constitution, and are causing irreparable harm.

WHEREFORE, the plaintiffs demand judgment in their favor, and against defendants, as follows:

A.      Restraining and enjoining defendants from taking any actions to further their investigation of the identity of anonymous speakers who are critical of the Superintendent, Board, or public schools related to transgenderism programming and curricula, including, without limitation: making inquiries of staff, Board Members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons.

B.      Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

C.      Awarding such other and further equitable relief as may be just.

**FIFTH COUNT**
**(Injunction 42 U.S.C. § 1983, Equal Protection)**

63. The plaintiffs repeat and reassert each and every allegation above as if fully set forth herein at length.

64. Defendants, by their conduct, have violated the United States Constitution, *to wit*, Amendment XIV, by failing to apply the law equally.

65. More particularly, defendants are selectively attempting to punish speech and thought by investigating and seeking to punish a Board member for perceived anonymous speech which is critical to defendants' favored speech, being transgenderism here, while not investigating and seeking to punish other Board members who openly write social media posts which are potentially to offense to others, such as Christians, which speech defendants support.

66. Such unequal application of the laws has violated the plaintiffs' rights, and those of citizens, generally.

WHEREFORE, the plaintiffs demand judgment in their favor, and against defendants, as follows:

A.      Restraining and enjoining defendants from taking any actions to further their investigation of the identity of anonymous speakers who are critical of the Superintendent, Board, or public schools related to transgenderism programming and curricula, including, without limitation: making inquiries of staff, Board Members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons.

B.      Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

C.      Awarding such other and further equitable relief as may be just.

## SIXTH COUNT
### (Injunction N.J.S.A. 10:6-2, Equal Protection)

67.  The plaintiffs repeat and reassert each and every allegation above as if it was fully set forth herein at length.

68.  By their actions as aforesaid, defendants have violated the Equal Protection of the law required under New Jersey's Constitution and laws, express or implied, and has caused the plaintiffs damage.

WHEREFORE, the plaintiffs demand judgment in their favor, and against defendants, as follows:

A.    Restraining and enjoining defendants from taking any actions to further their investigation of the identity of anonymous speakers who are critical of the Superintendent, Board, or public schools related to transgenderism programming and curricula, including, without limitation: making inquiries of staff, Board Members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons.

B.    Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

C.    Awarding such other and further equitable relief as may be just.

MURRAY-NOLAN BERUTTI LLC
*Attorneys for John and Rebecca Petersen*

*Ronald A. Berutti*

By:_____
        Ronald A. Berutti

Dated: April 18, 2023

**VERIFICATION UNDER OATH**

JOHN PETERSEN, of full age, being duly sworn upon his or her oath according to law deposes and says:

1. I am the plaintiff in this matter.

2. I have read the Complaint and aver that the facts contained therein are true to the best of my knowledge except as to those matters stated on information and belief, which I believe to be true.

_____
John Petersen

Date: April 18, 2023

REBECCA PETERSEN, of full age, being duly sworn upon his or her oath according to law deposes and says:

1. I am the plaintiff in this matter.

2. I have read the Complaint and aver that the facts contained therein are true to the best of my knowledge except as to those matters stated on information and belief, which I believe to be true.

_____
Rebecca Petersen

Date: April 18, 2023

EXHIBIT A

**Nancy Tucker** <ntucker@hcrhs.org> Unsubscribe                                    Wed, Mar 22, 2:05 PM (3 days ago)

to me

Dear Members of the Hunterdon Central Community,

At our Board of Education meeting on Monday night, we heard concerns during public comment about a Twitter account with transphobic and other distressing content. Allegations have been made that a sitting member of our Board operates the account.

The Board and our Superintendent reject the hateful ideas posted in this account as harmful to children and adults in our community and to our school's mission. These posts convey outright disdain and disrespect for our Board, our school, and our staff. Therefore, we believe these posts do not reflect how a board member should communicate about the district they serve.

We champion the efforts of each of our students to discover and express their unique identity. The Board is grateful for the work of our staff and administration to support students toward feeling a sense of belonging in our school and believes that this work must progress.

The Board recognizes the gravity of this allegation and takes seriously its obligation to investigate. If you have anything to share with us, either to assist in our investigation or to offer any other thoughts, please email Board of Education President, Lisa Hughes at lisa.hughes@hcrhs.org.

The Hunterdon Central Regional High School District Board of Education

EXHIBIT B



Edward Brandt <ebrandt@hcrhs.org>
to me

Wed, Mar 22, 2:35 PM (2 days ago)

Dear HC Students,

The following is an important message that our Board of Education has sent to all Hunterdon Central families and staff members this afternoon. As members of our school community, we feel that the message should be shared with you, as well. Please let me know if you have any questions or concerns.

Sincerely,
Mr. Brandt, Principal

Dear Members of the Hunterdon Central Community,

At our Board of Education meeting on Monday night, we heard concerns during public comment about a Twitter account with transphobic and other distressing content. Allegations have been made that a sitting member of our Board operates the account.

The Board and our Superintendent reject the hateful ideas posted in this account as harmful to children and adults in our community and to our school's mission. These posts convey outright disdain and disrespect for our Board, our school, and our staff. Therefore, we believe these posts do not reflect how a board member should communicate about the district they serve.

We champion the efforts of each of our students to discover and express their unique identity. The Board is grateful for the work of our staff and administration to support students toward feeling a sense of belonging in our school and believes that this work must progress.

The Board recognizes the gravity of this allegation and takes seriously its obligation to investigate. If you have anything to share with us, either to assist in our investigation or to offer any other thoughts, please email Board of Education President, Lisa Hughes at lisa.hughes@hcrhs.org.

The Hunterdon Central Regional High School District Board of Education

EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>

PAUL TANKO,

                     Plaintiff,

v.

JEFFREY MOORE, Ed.D., individually and in his capacity as Superintendent of School, and the HUNTERDON CENTRAL REGIONAL HIGH SCHOOL BOARD OF EDUCATION,

                     Defendants.

</td><td>

Case No.

**VERIFIED COMPLAINT AND JURY DEMAND**

</td></tr>
</table>

The plaintiffs PAUL TANKO ("Mr. Tanko"), by his attorneys Murray-Nolan Berutti LLC, with knowledge as to their own acts, an on information and belief as to all others, alleges as follows:

### OVERVIEW

1.       This matter arises from an illegal investigation being undertaken by defendants Jeffrey Moore, Ed.D., who is spearheading the investigation, and the Hunterdon Central Regional High School ("HCRHS") district Board of Education ("Board"). More specifically, defendants Moore and the President and Vice President of the Board were made aware by "activists" about a Twitter account known as "mammallama," wherein certain anonymous Tweets related to transgender issues, which are controversial issues of public concern, were made. More specifically, the Tweets included a photograph of a display for Women's History Month which features photographs of two biological males dressed in women's clothing which were critical of defendant Moore and the display, asserting it to be misogynistic.

2.       Since that time, defendant Moore, together with Board President Lisa Hughes ("Hughes") and Vice President Dorothea Kellogg ("Kellogg") have decided that they wish to tie the constitutionally protected anonymous writer's "tweets" to Board member Rebecca Petersen

and conducted a closed Board meeting designed to put forth their "evidence" of such belief.

3.      The day after such meeting, defendant Moore interrogated Mr. Tanko, a long-time security guard at HCRHS while the school principal took notes and advised Mr. Tanko that Moore and the Board were investigating how the photograph taken of a Women's History Month display which featured two men wound up on the internet. After Mr. Tanko readily admitted that he took the photo and shared it with an interest group because he felt offended by such display since it violated his mores and religious sensibilities, defendant Moore advised that Mr. Tanko would be suspended with pay while the "investigation" related to how the photograph ended up with "mammallama" was ongoing.

4.      Defendants' have focused on Mr. Tanko's protected speech both currently and in the past, while displaying no concern for his important role as a security officer, in that (a) in the past Mr. Tanko was told by the Human Resources Director, presumably at Moore's command and/or with his knowledge, that politically-oriented bumper sticker had to be removed from his automobile which was parked in the school parking lot, when others with speech that Moore deemed to be acceptable political messages did not have to be removed; and (b) while being questioned about his photographing the public display, Mr. Tanko was lectured by Moore about how he must call students by their "preferred pronouns," to which Mr. Tanko advised that he does not use pronouns for students but instead respectfully calls each student by his or her name, and that the use of "preferred pronouns" does not conform with his religious faith and nature.

5.      Mr. Tanko now has been served what is known as a *Rice* Notice, advising him that the Board intends to discuss Mr. Tanko's employment on April 24, 2023, wherein it is anticipated that Moore will recommend Mr. Tanko's termination because he took the subject photograph. A true copy of that notice, which suspends Mr. Tanko with pay and precludes him from entering Board property, participating in any Board-sponsored events, **or contacting any Board employee**

**or student/parent with regard to the current investigation, all of which violate** Mr. Tanko's civil rights since the investigation is based exclusively on Mr. Tanko's protected First Amendment activity related to speech and association, and with respect to protected activity of an anonymous third party who posted the photograph online. A true copy of the *Rice* notice is attached hereto as **Exhibit A** and is incorporated herein by reference.

6.    Mr. Tanko was in no way prohibited as part of his employment from taking the subject photograph or from sharing it, nor is there anything inappropriate about the photograph, a true copy of which is attached hereto as **Exhibit B**. In fact, many students and other staff photographed the public display as well. The difference is, however, that Mr. Tanko is being associated with the anonymous Twitter account and Mrs. Petersen, such that he is being held up to unconstitutional scrutiny based on his speech and perceived association. Thus, Mr. Tanko's actions at all times were protected by the First and Fourteenth Amendments of the United States Constitution, and Article I, ¶¶ 1, 4, 6, and 18 of the New Jersey Constitution, which defendants are violating.

7.    Moreover, despite the importance of campus security especially in light of the multiple school shooting which plague the nation, Moore never has engaged Mr. Tanko or the security team at HCRHS to discuss security protocols or concerns that they may have with respect to the same. Instead, although there was and is no legitimate reason to investigate the mammallama account since there was no violation of law, and there was no reason to question Mr. Tanko because there was no breach of school security, Moore has focused on enforcing a particular and singular narrative related to transgender issues. Such focus by Moore and the Board is a form of religious fanaticism which is an unconstitutional attempt to establish a religion since it requires one to believe the truth of what is being spoken although it is contrary to nature and biology, while punishing those who do not agree with such religious beliefs.

8.     For such reasons, defendants, who are state actors, have violated Mr. Tanko's constitutional rights for which he seeks injunctive relief and damages under federal and state civil rights laws.

## THE PARTIES

9.     Mr. Tanko is a security guard at HRCHS and is a retired Lieutenant of Police at Rutgers University, whose address is 9 Hammer Road, Stockton, New Jersey 08559.

10.     Defendant Jeffrey Moore, Ed.D., is Superintendent of the HRCHS district, and is an individual, whose address is 15 Haverfarm Road, Clinton, New Jersey 08809.

12.     Defendant HRCHS district Board of Education is duly organized and formed pursuant to the laws of the State of New Jersey with respect to the establishment of school districts and boards.

13.     Defendants Moore and the Board are state actors with respect to all material allegations herein and were and are engaged in official policy making activities and carrying out the same at all pertinent times herein.

## JURISDICTION AND VENUE

14.     This action is brought pursuant to 42 U.S.C. § 1983, such that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

15.     Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b) since defendants reside in the District and the events and omissions complained of occurred in the District.

## FACTS COMMON TO ALL COUNTS

17.     Mr. Tanko has been employed by the HCRHS district for 7 years following a long career in law enforcement. At all times he has been an exemplary employee and has brought his experience to keeping the school safe and free of major incidents in his time in the position.

18.     On March 20, 2023, at an open public meeting of the Board, certain residents of the community complained of Tweets on the social media outlet Twitter which such residents felt constituted inappropriate speech by an anonymous "Tweeter", which such individuals attributed to an unidentified member of the HCRHS Board. The Tweets concerned controversial matters of public importance related to transgender issues, including criticism of a photograph of a public display at HCRHS which included two men dressed as females in a tribute to Women's History Month..

19.     The subject Tweets, regardless of who posted them, were legal and constituted speech protected by the United States Constitution, Amendments 1 and 14, which protect anonymity is speech, and the New Jersey Constitution, Art. I ¶ 6.

20.     Thereafter, on March 22, 2023, Hughes sent an email to the entire HCRHS community from an official HCRHS account of a third party in which she purported to assert the official judgment of the entire HCRHS Board because of the content of such speech, and more specifically, "These posts convey outright disdain and disrespect for our board, our school, and our staff. Therefore, we believe that these posts do not reflect how a board member should communicate about the district they serve." Thus, defendants were specifically targeting anonymous controversial speech of public importance, which was critical of HCRHS and is constitutionally protected.

21.     The email from Hughes further asserted that such anonymous Tweets came from a Member of the Board, and expressed a purported judgment of the entire Board that the content of such Tweets were disdainful, and more specifically: "The Board and our Superintendent reject the hateful ideas posted in this account as harmful to children and adults in our community and to our school's mission," and that "The Board recognizes the gravity of this allegation and takes seriously

its obligation to investigate." Thus, Hughes asked that any other information to assist in the "investigation" be emailed to her at her official HCRHS email address.

22.    Hughes' email effectively served as a type of 'speech police' warning to residents of the HCRHS district that views opposing her own related to transgenderism, and those associated with such views, were disapproved and potentially subject to punishment.

23.    Defendants called an Executive Session of the Board for Wednesday, March 29, 2023, for the purpose of "investigating" the anonymous speech and attempting to associate it with Mrs. Petersen to punish her.

24.    After the meeting, during which Mrs. Petersen was the target of derision and efforts by the public and then Moore to embarrass and punish Mrs. Petersen for being associated in his view with mammallama and or the anonymous writings of such individual or individuals, all of which anonymous publications related to controversial topics of public concern which defendants deemed to be critical of themselves and the HCRHS itself.

25.    On Thursday, March 30, 2023, Mr. Tanko was called into the office to speak with Moore and the HCRHS Principal. Moore interrogated Mr. Tanko as to whether he took a photo of the subject public exhibit, which he admitted to doing. When asked why, Mr. Tanko advised Moore that he was offended by the display for Women's History Month containing photographs of men holding themselves out as women.

26.    Although Mr. Tanko readily admitted to taking the photograph, Moore provided Mr. Tanko with video footage from school security cameras showing Mr. Tanko taking the photograph.

27.    In order to obtain such footage, Moore, or some staffer or third party on his behalf likely expended unnecessary time and resources, which time was taken away from their legitimate duties with respect to district students, going through security footage to find the video of Mr.

Tanko taking a photograph, when there was no legal purpose for such investigation. Such video search also will reveal numerous instances of students and staff photographing the same thing, all of which was legal, as was sharing such photographs on the internet and with third parties, including interest groups.

28.    Moore further demanded to know whether Mr. Tanko shared his photograph, since it ended up on the internet on mammallama's Twitter feed. Although Moore's questioning was legally improper, Mr. Tanko readily admitted that he shared the photograph with a group of concerned citizens, since he wanted them to be aware that the school was placing men on a Women's History Month display. Mr. Tanko also advised Moore that placing men on a Women's History Month display offended him as a Catholic.

29.    During the interrogation, Moore also questioned Mr. Tanko about his use of the "proper pronouns" of students who want to identify as the opposite sex of their nature. Mr. Tanko advised that he refers to students by their name and does not use "requested" pronouns because it was against his religion and natural law. Instead, Mr. Tanko advised that he respectfully uses the students' "preferred" name.

30.    This was not the first time that Mr. Tanko had been harassed about his beliefs by Moore and/or the Board or at their direction. More specifically, because of his beliefs, since defendants required Mr. Tanko to remove a political bumper magnet from his automobile which expressed a political message which defendants disagreed with, while defendants did not require other political messages on other vehicles to be removed since they agreed with such messages. A true copy of a photograph showing the sticker that Mr. Tanko was required to remove is attached hereto as **Exhibit C**.

31.    Following the interrogation of Mr. Tanko, Moore advised Mr. Tanko that he would be suspended with pay pending the outcome of an investigation into his taking the photograph and

its association with the mammallama account, thus punishing Mr. Tanko for his perceived association citizens group with which he shared the photograph related to a controversial issue of public importance which was intended to be critical of defendants.

32.    Mr. Tanko's suspension was improper, as was the investigation into his First Amendment protected activity of taking and disseminating a photograph which was in a public school display, and which others were free to photograph and, in fact, did photograph, and was a warning to staff members having differing viewpoints and religious mores than those of Moore and some members of the Board, including Hughes and Kellogg, that such viewpoints and religious beliefs are unacceptable, and that association with others who share such viewpoints and beliefs about controversial transgender topics of public importance is unacceptable and will be punished to the extent that they conflict with Moore and such Board members' beliefs.

33.    Despite the growing importance of security on school campuses, Moore, whose office is located on the HCRHS campus, has never engaged Mr. Tanko or the entire security staff with respect to issues of campus security or their potential concerns about the same, but instead has focused his attention on Mr. Tanko's speech and associational rights which are completely unrelated to security at the school.

34.    Mr. Tanko now has been served with a *Rice* Notice advising him that he is going to be the subject of employment discipline discussion at a Board meeting scheduled for April 24, 2023.

35.    Defendants' investigation and related suspension of Mr. Tanko is constitutionally infirm in that they violate the United States Constitution, *to* wit, Amendments One and Fourteen, and the New Jersey Constitution and laws.

36.    Beyond the deprivation of Mr. Tanko's constitutional rights, which is irreparable harm in whole or in part under Supreme Court case law, Mr. Tanko has suffered with

8

embarrassment, humiliation, shame, emotional distress, physical distress and harm, and financial loss including, without limitation, loss of overtime pay and potential loss of benefits pay.

37,    The putative investigation also is discriminatory based on Mr. Tanko's age, since he is over 40 years old, has accumulated approximately 80 sick days for which payment will be owed, and declines benefits such that an annual payment must be made to him in addition to his normal pay.

38.    Mr. Tanko is also a target of political discrimination by Moore and the Board, since Mr. Tanko was instructed to remove certain bumper sticker from his automobile which was parked in the school parking lot with messages "COVID-19 Made in China," which Mr. Tanko was advised might be offensive. However, other staff members with political stickers, including those supporting controversial things such as "Black Lives Matter," were not asked to remove their stickers from the automobiles and were not told such stickers were offensive, such that defendants adopted such speech as being officially approved, while Mr. Tanko's speech was officially disapproved.

39.    Moore is a political activist and religious leader clothed with the title of "Superintendent" and is intolerable of those who disagree with his political and religious viewpoints, such as Mr. Tanko, such that he discriminates against such individuals based on their speech, association, and refusal to genuflect to Moore's compulsory transgender religious beliefs in violation of the United States Constitution and the New Jersey Constitution.

### FIRST COUNT
### (42 U.S.C. § 1983, First Amendment Speech and Association)

40.    Mr. Tanko repeats and reasserts each and every allegation above as if fully set forth herein at length.

41.    Defendants have committed a constitutional tort by virtue of their investigating an anonymous author who is critical of the defendants and the public school for purposes of punishing

or causing harm to them for the content of such speech, and otherwise punishing, explicitly or implicitly, and discriminating against Mr. Tanko for his speech.

42.    Such actions constitute deprivations of Mr. Tanko's civil rights under the United States Constitution's First Amendment, including freedom of speech and expression, freedom of association, and free exercise of religion.

43.    Such acts are purposeful and are being carried out as official policy, are ongoing, and are being undertaken in bad faith.

44.    By their actions, defendants have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution, *to wit*, United States Constitution Amendments I and XIV, and are causing irreparable harm and economic damages with such violations including, without limitation, pecuniary damage, embarrassment, humiliation, loss of enjoyment of life, and loss of standing in the community.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.    Compensatory Damages;

B.    Punitive Damages;

C.    Consequential Damages;

D.    Restraining and enjoining defendants from taking any actions to further their investigation of the identity anonymous speakers who are critical of the Superintendent, Board, or public schools including, without limitation: taking any action to punish Mr. Tanko which includes his immediate and full reinstatement to his position, making inquiries of staff, Board members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any

acts of retribution or discipline against any people known or suspected to have provided information to such person or persons;

E.    Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

F.    Awarding such other and further relief as may be equitable and just.

## SECOND COUNT
### (*N.J.S.A.* 10:6-2, Speech)

45.    Mr. Tanko repeats and reasserts each and every allegation above as if fully set forth herein at length.

46.    By their actions as aforesaid, defendants have and are continuing to violate the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, *to wit*, violating Art. I, Pars. 1, 6, and 18 of the New Jersey Constitution, and are causing Mr. Tanko irreparable harm and economic damages by such violations including, without limitation, pecuniary damage, embarrassment, humiliation, loss of enjoyment of life, and loss of standing in the community.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.    Compensatory Damages;

B.    Punitive Damages;

C.    Consequential Damages;

D.    Restraining and enjoining defendants from taking any actions to further their investigation of the identity anonymous speakers who are critical of the Superintendent, Board, or public schools including, without limitation: taking any action to punish Mr. Tanko which includes his immediate and full reinstatement to his position, making inquiries of staff, Board members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or

11

discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons;

      E.      Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

      F.      Awarding such other and further relief as may be equitable and just.

## THIRD COUNT
### (Injunction 42 U.S.C. § 1983, Establishment of Religion)

47.      Mr. Tanko repeats and reasserts each and every allegation above as if fully set forth herein at length.

48.      Defendants' efforts to compel individuals to accept their vision with respect to transgender people is religious in nature as evidenced, without limitation, by the improper investigation into mammallama, and the lecture of Mr. Tanko on the use of preferred pronouns, which are questions of morality that defendants are officially imposing on others, including Mr. Tanko.

49.      The suspension and ongoing threats of punishment of Mr. Tanko is the result, in whole or in part, of defendants' efforts to establish such religion in violation of United States Constitution Amendments I and XIV and are causing irreparable harm and economic damages by such violations including, without limitation, pecuniary damage, embarrassment, humiliation, loss of enjoyment of life, and loss of standing in the community.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

      A.      Compensatory Damages;

      B.      Punitive Damages;

C.    Consequential Damages;

D.    Restraining and enjoining defendants from taking any actions to further their investigation of the identity anonymous speakers who are critical of the Superintendent, Board, or public schools including, without limitation: taking any action to punish Mr. Tanko which includes his immediate and full reinstatement to his position, making inquiries of staff, Board members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons;

E.    Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

F.    Awarding such other and further relief as may be equitable and just.

## FOURTH COUNT
### (*N.J.S.A.* 10:6-2, Establishment of Religion)

50.    Mr. Tanko repeats and reasserts each and every allegation above as if fully set forth herein at length.

51.    By their actions as aforesaid, defendants have and are continuing to violate the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, *to wit*, violating Art. I, Par. 4 of the New Jersey Constitution, and are causing irreparable harm and economic damages by such violations including, without limitation, pecuniary damage, embarrassment, humiliation, loss of enjoyment of life, and loss of standing in the community.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.    Compensatory Damages;

13

B.    Punitive Damages;

C.    Consequential Damages;

D.    Restraining and enjoining defendants from taking any actions to further their investigation of the identity anonymous speakers who are critical of the Superintendent, Board, or public schools including, without limitation: taking any action to punish Mr. Tanko which includes his immediate and full reinstatement to his position, making inquiries of staff, Board members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons;

E.    Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

F.    Awarding such other and further relief as may be equitable and just.

## FIFTH COUNT
### (42 U.S.C. § 1983, Equal Protection)

52.    Mr. Tanko repeats and reasserts each and every allegation above as if fully set forth herein at length.

53.    Defendants, by their conduct, have violated the United States Constitution, *to wit*, Amendment XIV, by failing to apply the law equally.

54.    More particularly, defendants are selectively attempting to punish speech, association, and thought by investigating and seeking to punish a Mr. Tanko and other individuals who are critical of defendants' favored speech, or who are perceived as being critical of such speech, while not investigating and seeking to punish other Board members who openly write

social media posts which are potentially to offense to others, such as Christians, which speech defendants support.

55.     Defendants have raised their political agendas and thinking above that of those who would disagree with them and have applied rules and punishments unequally as a result including, without limitation, the transgender questions whereby only Mr. Tanko was questioned for his photograph when many others also took photographs of the same exhibit, and political issues related to "offensive" bumper stickers when other political messages are tolerated without comment or interference.

56.     Such unequal application of the laws has violated Mr. Tanko's rights and are causing irreparable harm and economic damages including, without limitation, pecuniary damage, embarrassment, humiliation, loss of enjoyment of life, and loss of standing in the community.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.     Compensatory Damages

B.     Punitive Damages;

C.     Consequential Damages;

D.     Restraining and enjoining defendants from taking any actions to further their investigation of the identity anonymous speakers who are critical of the Superintendent, Board, or public schools including, without limitation: taking any action to punish Mr. Tanko which includes his immediate and full reinstatement to his position, making inquiries of staff, Board members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any

acts of retribution or discipline against any people known or suspected to have provided information to such person or persons;

     E.    Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

     F.    Awarding such other and further relief as may be equitable and just.

## SIXTH COUNT
### (N.J.S.A. 10:6-2, Equal Protection)

57.    Mr. Tanko repeats and reasserts each and every allegation above as if it was fully set forth herein at length.

58.    By their actions as aforesaid, defendants have violated the Equal Protection of the law required under New Jersey's Constitution and laws, express or implied, and are causing irreparable harm and economic damages by such violations including, without limitation, pecuniary damage, embarrassment, humiliation, loss of enjoyment of life, and loss of standing in the community.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

     A.    Compensatory Damages;

     B.    Punitive Damages;

     C.    Consequential Damages;

     D.    Restraining and enjoining defendants from taking any actions to further their investigation of the identity anonymous speakers who are critical of the Superintendent, Board, or public schools including, without limitation: taking any action to punish Mr. Tanko which includes his immediate and full reinstatement to his position, making inquiries of staff, Board members, employees, students, parents, and/or any third party; sharing information about the investigation's

16

findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons;

E.   Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

F.   Awarding such other and further relief as may be equitable and just.

## SEVENTH COUNT
### (Law Against Discrimination, *N.J.S.A.* 10:5-2 et seq.)

59.   Mr. Tanko repeats and reasserts each and every allegation above as if fully set forth herein at length.

60.   Mr. Tanko is over 40 and is thus a member of a protected class pursuant to the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-2 *et seq.* ("NJLAD")

61.   Mr. Tanko was performing at the level expected of him as a security guard, including that Mr. Tanko showed up daily such that he has accumulated approximately 80 unpaid sick days, and school security has been free of major incidents during his tenure.

62.   Defendants have caused Mr. Tanko to suffer adverse employment actions as aforesaid in whole or in part because of his age and has no legitimate reason for such actions.

63.   As a result thereof, defendants have violated the NJLAD, thus directly and proximately causing irreparable harm and economic damages by such violations including, without limitation, pecuniary damage, embarrassment, humiliation, loss of enjoyment of life, and loss of standing in the community.

WHEREFORE, the plaintiffs demand judgment in their favor, and against defendants, as follows:

A.   Compensatory Damages;

17

B.     Punitive Damages;

C.     Consequential Damages;

D.     Restraining and enjoining defendants from taking any actions to further their investigation of the identity anonymous speakers who are critical of the Superintendent, Board, or public schools including, without limitation: taking any action to punish Mr. Tanko which includes his immediate and full reinstatement to his position, making inquiries of staff, Board members, employees, students, parents, and/or any third party; sharing information about the investigation's findings with any person or entity, including media; engaging in any acts of retribution or discipline against people suspected of being the subject person or people; and/or engaging in any acts of retribution or discipline against any people known or suspected to have provided information to such person or persons;

E.     Awarding the plaintiffs all costs of suit including reasonable legal fees and costs per statute;

F.     Awarding such other and further relief as may be equitable and just.

### **JURY DEMAND**

Trial by jury is demanded on all Counts so triable.

MURRAY-NOLAN BERUTTI LLC
*Attorneys for Paul Tanko*

*Ronald A. Berutti*

By:_____
      Ronald A. Berutti

Dated: April 18, 2023

## VERIFICATION UNDER OATH

PAUL TANKO, of full age, being duly sworn upon his or her oath according to law deposes and says:

1. I am the plaintiff in this matter.

2. I have read the Complaint and aver that the facts contained therein are true to the best of my knowledge except as to those matters stated on information and belief, which I believe to be true.

_Paul W Tanko_

Paul Tanko

Date: April 17, 2023

EXHIBIT A

 **Hunterdon Central Regional High School** 

84 Route 31, Flemington, New Jersey 08822-1239                    (908) 782-5727    FAX (908) 284-7314

March 30, 2023

**VIA EMAIL**

Paul Tanko

RE: Suspension with Pay Pending Investigation

Dear Mr. Tanko:

Please be advised that on account of the Hunterdon Central Regional High School District Board of Education's ("the Board") need to continue to investigate the circumstances of the incident that we discussed today, and with the approval of the Board president, you are hereby suspended, with pay, from your employment with the Board, pursuant to N.J.S.A. 18A:25-6 and N.J.S.A. 18A:6-8.3, effective immediately.

During the course of your suspension and the Board's investigation, you are not permitted on Board property, participate in any Board-sponsored events or functions, or contact any Board employee or student/parent with regard to the current investigation. Your school district email, voicemail, and network logons will be disabled during this period as well.

Your suspension will be reported to the Board at its meeting on April 24, 2023. Pursuant to the requirements of New Jersey Open Public Meetings Act, specifically N.J.S.A. 10:4-12(b), and the decision in *Rice v. Union County Regional High School*, this letter is to inform you that the Board may be discussing your suspension at that meeting, which will be held at 7:00 p.m. That discussion may include, but not be limited to, the incident and/or your employment status.

You have the right to be present at the meeting, and to either have representation accompany you, or attend on your behalf. The aforementioned discussion will take place in closed session unless we receive a written request indicating that you wish such discussion to be held in public session. In the event you wish such discussion, if any, to be held in public session, please deliver a written request to me no later than 2:30 pm on Wednesday, April 19, 2023.

Sincerely,

Jeffrey Moore, Ed.D
Superintendent

cc:    Personnel File

*We are an innovative school focused on wellness, powerful learning, strong partnerships, and service.*

EXHIBIT B



EXHIBIT C

